**MERRILL TENANT COUNCIL et al.,
Plaintiffs-Appellants,**

v.

**UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOP-
MENT (HUD) et al., Defendants-Appel-
lees.**

**No. 79–2476.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 23, 1980.

Decided Jan. 14, 1981.

Anthony J. Fusco, Jr., Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs-appellants.

Thomas P. Sullivan, U. S. Atty., Robert Breisblatt, Asst. U. S. Atty., Chicago, Ill., James T. Duda, Lansing, Ill., Robert E. Bennett, Chicago, Ill., for defendants-appellees.

Before SWYGERT, PELL and CUDAHY, Circuit Judges.

SWYGERT, Circuit Judge.

Plaintiffs appeal from an order dismissing their class action complaint which alleges that the United States Department of Housing and Urban Development ("HUD"), the Secretary of HUD, various HUD officials and two private management companies have failed to pay interest on tenant security deposits as required by Illinois law. Plaintiffs did not bring their action under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), but they instead sued in contract on the theory that the Illinois statutes requiring interest payment on security deposits were incorporated as implied terms in their agreements with HUD. We hold that plaintiffs may sue in contract, and that for purposes of this action sovereign immunity was waived under 12 U.S.C. § 1702.

In the first count of their complaint, plaintiffs referred to Ill.Rev.Stat. ch. 74, §§ 91–93, and sought, *inter alia*, an order to pay all interest due and a permanent injunction regarding prospective compliance. The second count cited Ill.Rev.Stat. ch. 74, § 92 and requested a declaratory judgment that defendants willfully failed to pay the interest and an order to pay damages in the amount of the security deposits paid by plaintiffs together with court costs and reasonable attorney's fees. The federal defendants moved to dismiss, and the trial judge dismissed both counts of the complaint without opinion. He also dismissed the private defendants *sua sponte*.

We reverse and order the complaint reinstated against both the federal and private defendants, except insofar as plaintiffs allege entitlement to damages in the amount of the security deposits. That portion of Ill.Rev.Stat. ch. 74, § 92 requiring that a lessor who willfully fails to pay interest to a lessee pay damages in the amount of the security deposit, we find to be a penalty and thus void under this contractual cause of action.

I

Assuming as we must that the allegations in the complaint are true, plaintiffs-appellants Merrill Tenant Council which is an unincorporated association representing tenants residing at 6700–6716 South Merrill Avenue in Chicago ("Merrill Project"), Mary Berry, Willie and Maxine Ferguson, Beverley Gardner, Inez Hill, Janice Adams, and Henrietta Hill reside in multi-family housing projects owned or operated by HUD. HUD and Moon C. Landrieu, Secretary of HUD; Elmer C. Binfold, Director of the Chicago Area Office of HUD; William Miller, Director of Housing Management in the Chicago Area Office; and John Davis, Director of Property Disposition in the Chicago Area Office, are charged with the administration of the properties at issue and are federal defendants in this case.

Private defendant Scherer Management, Inc. has been management agent for HUD of the Merrill Project. Private defendant Pyramidwest Realty and Management, Inc. has been managing agent for HUD with regard to the projects in which plaintiffs Inez and Henrietta Hill and plaintiff Adams reside.

Plaintiffs Gardner, Berry, and Willie and Maxine Ferguson paid security deposits to defendants, their agents, or predecessors in interest, at least three years prior to filing the complaint in this case. No interest has been paid to any of the plaintiffs by any of the defendants. Plaintiffs Adams and Inez and Henrietta Hill also paid security deposits to defendants, their agents, or predecessors in interest, more than two years before the complaint was filed in this case. None has received a payment of interest from the defendants.

At a meeting of the Merrill Tenant Council held on October 27, 1976, HUD was informed that interest due on security deposits was not being paid. On May 10, 1977 plaintiffs' counsel wrote to the Director of the Chicago Area Office of HUD demanding that interest due residents in all HUD owned or operated properties within the jurisdiction of the Chicago Area Office be paid. On July 27, 1977 another letter was sent, this time to the Area Counsel for the Chicago Area Office of HUD, stating that the interest had still not been paid. No

interest was paid to any of the plaintiffs, and this class action lawsuit was filed in the Circuit Court of Cook County on January 30, 1978.

Plaintiffs sued individually and on behalf of all other persons similarly situated alleging that defendants failed to comply with Ill.Rev.Stat. ch. 74, §§ 91–93, governing the payment of interest on tenant security deposits.[1] In the first count of their complaint plaintiffs alleged that defendants failed to comply with Ill.Rev.Stat. ch. 74, §§ 91–93. Plaintiffs sought, *inter alia*, an order to pay all interest due, and a permanent injunction regarding prospective compliance. The second count of the complaint, relying on Ill.Rev.Stat. ch. 74, § 92, requested a declaratory judgment that defendants' failure to pay interest was willful, and an order to pay damages in an amount equal to the amount of the security deposits paid by plaintiffs for each twelve month period for which defendants willfully failed to pay interest along with court costs and reasonable attorney's fees.

On motion of the federal defendants, pursuant to 28 U.S.C. § 1442(a)(1), the case was removed to the United States District Court for the Northern District of Illinois.[2] The district judge certified the case as a class action. On August 6, 1979 the federal defendants filed a motion to dismiss the complaint. That motion was granted without opinion in an order of October 18, 1979, in

---

1. A lessor of residential real property containing 25 or more units, who receives a security deposit from a lessee to secure the payment of rent or compensation for damage to property shall pay interest to the lessee computed from the date of the deposit at a rate of 5% per year on any such deposit held by the lessor for more than 6 months.
   Ill.Rev.Stat. ch. 74, § 91.
   The lessor shall, within 30 days after the end of each 12 month rental period, pay to the lessee any interest, by cash or credit to be applied to rent due, except when the lessee is in default under the terms of the lease. A lessor who willfully fails or refuses to pay the interest required by this Act shall, upon a finding by a circuit court that he has willfully failed or refused to pay, be liable for an amount equal to the amount of the security deposit, together with court costs and reasonable attorneys fees.

Ill.Rev.Stat. ch. 74, § 92.
   This Act does not apply to any deposit made with respect to public housing.
Ill.Rev.Stat. ch. 74, § 93.

2. At oral argument, it was clear that there is no dispute that the district court had jurisdiction of the lawsuit under 28 U.S.C. § 1442(a)(1) for purposes of deciding the other issues which are discussed in this opinion. The argument that the state court lacked jurisdiction because of sovereign immunity is meritless. The cases cited by the federal defendants are inapposite because in those cases there was no basis for jurisdiction in the state courts, whereas here we hold that the Secretary has consented to be sued "in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1702. *See* section III *infra*.

which the district judge *sua sponte*, found that the "defendants other than the federal defendants were and are acting only as agents of the federal defendants and as such should be dismissed." A final judgment order was entered on November 15, 1979, and this appeal followed.

## II

■ Plaintiffs-appellants argue that their cause of action for nonpayment of interest due on security deposits is contractual. The federal defendants, citing this court's recent decision in *FDIC v. Citizens Bank & Trust Co.*, 592 F.2d 364 (7th Cir.), *cert. denied*, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979), contend that plaintiffs' suit sounds in tort and therefore must be brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), which it was not. We do not agree with the defendants that our decision in *FDIC v. Citizens Bank and Trust Co.* controls this case or that this suit necessarily sounds in tort. In *Citizens Bank & Trust Co.*, a creditor of an insolvent state bank sued the Federal Deposit Insurance Corporation ("FDIC"), alleging that FDIC, acting as receiver, had wrongfully transferred assets of the insolvent bank to itself in its corporate capacity. The creditor argued that the insolvent bank had committed a breach of contract and that FDIC was a successor in interest to the bank. This court stated that FDIC, in its corporate capacity, assumed no liabilities of the receivership; we held that FDIC "*entered into no contract* with the creditor." 592 F.2d at 368 (emphasis added.) If FDIC, as receiver, did violate its duties, we concluded, liability for that breach would be in tort.

The facts of the present case compel a different holding. Here defendants are the lessors of real property and plaintiffs are their tenants. HUD or its predecessor in interest received a security deposit from each plaintiff. Whether the posting of a security deposit was a written term in the lease, that payment was required as part of the agreement between lessor and lessee. Illinois law provides that interest must be paid on a security deposit by a

> lessor of residential real property containing 25 or more units, who receives a security deposit from a lessee ... computed from the date of the deposit at a rate of 5% per year on any such deposit held by the lessor for more than 6 months.

Ill.Rev.Stat. ch. 74, § 91.[3]

We agree with plaintiffs that the statutory duty to pay interest became an implied term of the contract that existed between the plaintiffs and HUD.

As early as 1883, the Illinois Supreme Court stated:

> ... [N]othing is better settled than that in many contracts ... the law silently annexes certain conditions ... which are not all, in express terms provided for in the contract, yet, in contemplation of law, they are nevertheless regarded as a part of the contract, and the non-performance of them may, in an action on the contract, be assigned as a breach thereof.

*Nevin v. Pullman Palace Car Co.*, 106 Ill. 222, 233 (1883). In *Schiro v. W. E. Gould & Company*, 18 Ill.2d 538, 165 N.E.2d 286 (1960), the Illinois Supreme Court held that a purchaser damaged because of a builder's failure to comply with duties imposed by municipal ordinances could sue in contract, although the contract did not expressly incorporate the requirements of the municipal

---

**3.** It is not disputed that the properties in which plaintiffs reside contained twenty-five or more units as required by section 91.

At oral argument counsel for the federal defendants suggested that the provisions of sections 91 and 92 are inapplicable because the units in question are "public housing." Section 93, Ill.Rev.Stat. ch. 74, § 93, provides: "This Act does not apply to any deposit made with respect to public housing." That argument was not raised in the district court, and in their brief, federal defendants state that the question of whether the units are public housing, "has not been raised since it did not affect the basis of the motion to dismiss." Without the benefits of briefing or argument on that issue, we decline to address it here. We must assume that the basis for the dismissal of the federal defendants was jurisdictional. The issue of whether the units involved are "public housing" may, of course, be raised on remand.

code. Citing *Economy Fuse & Mfg. Co. v. Raymond Concrete Pile Co.*, 111 F.2d 875 (7th Cir. 1940), in which this court had interpreted Illinois law, the Illinois Supreme Court stated that the law existing at the time and place of the making of the contract formed a part of the contract as though it had been expressly incorporated therein.[4] *Schiro* was followed in *Jack Spring, Inc. v. Little*, 50 Ill.2d 351, 280 N.E. 208 (1972). There the Illinois Supreme Court held that there was an implied warranty of habitability fulfilled by compliance with the pertinent provisions of the Chicago Building Code which were incorporated in the contract. Defendants' attempts to distinguish those cases are unpersuasive. We hold that the statutes at issue in the instant case created additional terms in the agreements between HUD and its tenants and that the plaintiffs may sue in contract.

### III

■ The federal defendants argue that sovereign immunity has not been waived so as to allow this action against HUD. Plaintiffs assert jurisdiction under section 1 of the National Housing Act, as amended, 12 U.S.C. § 1702, which provides:

> The Secretary shall, in carrying out the provisions of this subchapter and subchapters II, III, V, VI, VII, VIII, X, IX–A, and IX–B, of this chapter, be authorized in his official capacity, *to sue and be sued* in any court of competent jurisdiction, State or Federal.

(emphasis added.)[5]

In *FHA v. Burr*, 309 U.S. 242, 245–46, 60 S.Ct. 488, 490–491, 84 L.Ed. 724 (1940), the Supreme Court interpreted that waiver of sovereign immunity broadly, stating that in the absence of a clear showing that there were implied exceptions it must be presumed that a governmental agency launched into the commercial world with authority to sue and be sued is "not less amenable to judicial process than a private enterprise under like circumstances would be." Defendants point out, however, that 12 U.S.C. § 1702 provides "sue and be sued" authority only in circumstances in which the Secretary is "carrying out" specified provisions of the Act. They contend that there is no relationship between the Illinois interest statutes and the subchapters enumerated in 12 U.S.C. § 1702. We do not agree.

According to the complaint, HUD owns or operates the properties at issue pursuant to federal mortgage insurance programs which are provided for in subchapter II of the National Housing Act. The duty imposed by the Illinois interest statutes arises by virtue of the federal mortgage insurance programs under which HUD is responsible for the operation and leasing of plaintiffs' apartments. Thus, we conclude that section 1702 applies and that "[t]he Secretary ... in carrying out the provisions of subchapter ... II [may] ... be sued."[6]

---

**4.** The rationale for that rule, the court explained

> is that the parties to the contract would have expressed that which the law implies "had they not supposed that it was unnecessary to speak of it because the law provided for it." (12 I.L.P. 399.) Consequently, the courts, in construing the existing law as part of the express contract, are not reading into the contract provisions different from those expressed and intended by the parties, as defendants contend, but are merely construing the contract in accordance with the intent of the parties.

18 Ill.2d at 544, 165 N.E.2d 286.

**5.** According to the federal defendants, even if this suit is in contract, it must be brought under the Tucker Act, 28 U.S.C. § 1346(a)(2). Because the amount in controversy exceeds

$10,000, defendants assert that the district court lacks jurisdiction. Ordinarily a suit in contract brought against the United States or a federal agency is brought under 28 U.S.C. § 1346(a)(2), which waives sovereign immunity subject to certain limitations. But here plaintiffs need not and do not invoke the Tucker Act, because federal jurisdiction lies pursuant to 28 U.S.C. § 1442(a)(1), and plaintiffs rely on section 1 of the National Housing Act, as amended, 12 U.S.C. § 1702, for the waiver of sovereign immunity. Because this suit is not based on 28 U.S.C. § 1346(a)(2), the $10,000 limitation on the district court's jurisdiction does not apply. *Trans-Bay Engineers & Builders, Inc. v. Hills*, 551 F.2d 370 (D.C.Cir.1976).

**6.** Plaintiffs also assert a waiver of sovereign immunity under 42 U.S.C. § 3535(i)(1) and 5 U.S.C. § 702. Because we conclude that juris-

■ The federal defendants next assert that there is no fund from which plaintiffs may recover, making the instant case "a suit against the United States" and for that reason not within the waiver provision in 12 U.S.C. § 1702. It is true that for a claim to be against the Secretary of HUD and within the scope of the "sue and be sued" clause of 12 U.S.C. § 1702, a judgment for plaintiffs must come from funds within the control of the Secretary. The Supreme Court has interpreted the language in 12 U.S.C. § 1702 requiring expenditures by the Secretary to be made from "funds made available by this [Chapter]," to prohibit recovery from the United States Treasury. *FHA v. Burr*, 309 U.S. 242, 250, 60 S.Ct. 488, 492–493, 84 L.Ed. 724 (1940) ("To conclude otherwise would be to allow proceedings against the United States where it had not waived its immunity."). The plaintiffs insist that there are funds within the Secretary's control that can be used to satisfy the judgment in this case.

We begin our analysis of the availability of funds from which a judgment can be paid by noting that plaintiffs' complaint is in two counts: the first count citing Ill.Rev. Stat. ch. 74, §§ 91–93 requests that the district court issue an order requiring that outstanding interest due on security deposits be paid to all plaintiffs. The second count is based on that part of Ill.Rev.Stat. ch. 74, § 92, which provides in part:

A lessor who willfully fails or refuses to pay the interest required by this Act shall, upon a finding by a circuit court that he has willfully failed or refused to pay, be liable for an amount equal to the amount of the security deposit, together with court costs and reasonable attorney's fees.

While the amount of the damages sought under the first count of the complaint is limited to the interest due; the second count, requiring a payment in the amount of the actual security deposit to each plaintiff in addition to court costs and attorney's fees, demands a much larger sum. Therefore, the survival of the second count of the complaint significantly affects the magnitude of the judgment at issue. For that reason, before deciding whether there may be funds within the Secretary's control from which to satisfy a judgment for plaintiffs, we shall address the defendants' argument that the second count of the complaint was properly dismissed even if the first count was not.

The federal defendants assert that the part of Ill.Rev.Stat. ch. 74, § 92 allowing recovery in the amount of the security deposits plus court costs and attorney's fees for a willful failure to pay is a penalty provision and that the waiver of sovereign immunity found in 12 U.S.C. § 1702 does not authorize suits against the government for a penalty. Plaintiffs, on the other hand, urge us to interpret the Illinois statute not as a penalty but as a liquidated damages provision implied in the contract between plaintiffs and defendants. Moreover, plaintiffs disagree with defendants' assertion that the waiver of sovereign immunity in section 1702 does not extend to suits for a penalty, arguing that the "sue and be sued" language is broad enough to authorize recovery under Ill.Rev.Stat. ch. 74, § 92, even if we find that section to be a penalty.

Section 92 sets damages for a willful failure to pay interest in an amount equal to the amount of the security deposit together with court costs and attorney's fees. We hold that plaintiffs may properly sue for court costs and attorney's fees, but that the provision for damages in the amount of the security deposits is a penalty clause and therefore void under Illinois contract law.[7]

Although under Illinois law a successful litigant cannot normally recover costs and

---

diction lies under 12 U.S.C. § 1702, we need not discuss whether those statutes are additional bases for jurisdiction in this case. We note, however, that the argument that 42 U.S.C. § 3531(i)(1) allows the recovery of a penalty in this case is without merit.

7. Because a penalty clause is void in a contractual cause of action in Illinois, we do not reach the issue of whether the waiver of sovereign immunity extends to a penalty.

attorney's fees from his losing adversary, there is a well-established exception permitting recovery of both costs and attorney's fees when there has been an agreement to allow them. *Ritter v. Ritter*, 381 Ill. 549, 553, 46 N.E.2d 41, 43 (1943). In the instant case, we find that Ill.Rev.Stat. ch. 74, § 92 as an incorporated term in the contract between HUD and the plaintiffs operates as an agreement authorizing the allowance of court costs and reasonable attorney's fees in the event that HUD has willfully failed to pay the interest. We hold that costs and attorney's fees are authorized by Illinois law in these circumstances, and we reject the defendants' contention that section 92 is a penalty as regards those items.[8]

Because plaintiffs sue in contract, we must adhere to our contract analysis and proceed to determine whether that part of section 92 providing for payment in the amount of the security deposit should be interpreted as a liquidated damages provision or a penalty clause.[9] According to Illinois law, a term fixing unreasonably large liquidated damages is void as a penalty. *Parker-Washington Co. v. Chicago*, 267 Ill. 136, 107 N.E. 872 (1915); *Giesecke v. Cullerton*, 280 Ill. 510, 117 N.E. 777 (1917).

> A predetermined damages clause will be given effect if actual damages are difficult to ascertain and the . . . clause is a reasonable estimate of the [actual] dam-

ages. . . . The damages provided must be for a specified amount for a specific breach to be paid as an alternative to performance and not as a penalty for nonperformance.

*Builder's Concrete, Etc. v. Fred Faubel & Sons*, 58 Ill.App.3d 100, 107, 15 Ill.Dec. 517, 523, 373 N.E.2d 863, 869 (1978) (citations omitted).

In the instant case, we can perceive no reasonable relationship between a payment in the amount of the security deposit and the actual harm suffered by plaintiffs.[10] If plaintiffs recover the unpaid interest and their costs and attorney's fees, we cannot say that they will not have obtained an adequate remedy as an alternative to defendants' performance. Therefore, insofar as Ill.Rev.Stat. ch. 74, § 92 requires payment in the amount of the security deposit for a willful failure to pay the interest, we find that it is a penalty and void according to Illinois law.

We now return to the defendant's contention that there is no fund within the Secretary's control from which to satisfy plaintiffs' claims. Because we hold that plaintiffs cannot sue the federal defendants for the amount of the security deposits, the monetary recovery to which plaintiffs would be entitled amounts to interest plus court costs and attorney's fees. We cannot

---

**8.** That the disputed provision requires a finding of willfulness does not automatically make it a penalty. If costs and fees are recoverable by agreement under Illinois law, we hold that an agreement can provide under what circumstances they are recoverable. The statute impliedly incorporated as a term in this agreement authorizes the recovery of court costs and attorney's fees in the circumstances of a willful failure to pay interest.

**9.** A novel question is here presented because the arguable penalty clause, which for purposes of this action operates as an implied term in a contract, was "written" not by the parties but by the Illinois legislature. It could be argued that in the case of a statute incorporated as a term in a contract, the penalty should be enforced because it was a creation of the state legislature and thus differs from a penalty clause created by private parties to a contract. We have determined that such an analysis must be rejected.

In enacting Ill.Rev.Stat. ch. 74, § 92, the Illinois legislature created and envisioned a statutory cause of action. It was the Illinois courts and not the Illinois legislature that decided that an existing statute, such as section 92, was to be incorporated as an implied term in an express contract. Because plaintiffs here do not bring a statutory cause of action but rather sue in contract claiming breach of an implied term, we hold that the Illinois common law contract analysis of penalties versus liquidated damages must be applied to determine enforceability.

**10.** It is crucial to recognize that a tenant who under section 92 recovers the amount of his security deposit by reason of his landlord's willful failure to pay interest would still be entitled to receive a return of his security deposit on the termination of his lease, consistent with Ill.Rev.Stat. ch. 80, § 101.

agree with defendants' assertion that this suit should be dismissed because as a matter of law, no HUD funds are available for payment.

First, HUD's Property Disposition Handbook, Multi-family Properties, No. 4315.1, Ch. 4, ¶ 109, p. 41 (3/77), provides: "Any funds collected as security deposits shall be kept separate and apart from all other funds of the project in a Security Deposit Bank Account (interest-bearing, as permitted by law), the amount of which shall at all times equal or exceed the aggregate of all outstanding obligations under said account." As plaintiffs point out, given the five percent interest rate payable under Ill.Rev.Stat. ch. 74, § 91, and current high interest rates, all monies presently kept in interest-bearing accounts may well be earning the five percent interest defendants are required to pay.

Second, plaintiffs pay rent to HUD, thereby creating an additional source of funds from which recovery could be had. We note that plaintiffs in their second count, reasonably suggest that payment could be in the form of "credit against said plaintiffs and class and subclass members' rental payments."

At this stage of the proceedings and without more information as to the circumstances under which HUD "owns or operates" the properties at issue, we cannot know exactly what other special funds, if any, would be available for payment in this case. Suffice it to say that if this complaint was dismissed because the trial judge concluded as a matter of law, that there are no funds within the Secretary's control from which to satisfy a judgment for plaintiffs, he was in error.

## IV

In their reply brief on appeal, plaintiffs argue for the first time that the actions of the federal defendants were *ultra vires* their statutory authority and thus are not protected by sovereign immunity. Although we have held that sovereign immunity has been waived by 12 U.S.C. § 1702, we have also stated that plaintiffs cannot recover the amount of the security deposits because that payment would constitute a penalty under a section 1702 contractual cause of action. According to the *ultra vires* exception to the doctrine of sovereign immunity, however, plaintiffs might be entitled to sue the federal defendants for a penalty, because they could sue directly under the Illinois statute and not be limited by the Federal Tort Claims Act.

■ For purposes of this appeal, however, we reject plaintiffs' *ultra vires* contention both because it was not properly pleaded in the complaint and because it was never raised in the trial court. In *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1948), the Supreme Court articulated a specific requirement for a plaintiff who attempted to circumvent the doctrine of sovereign immunity by alleging that a federal official had acted *ultra vires* his statutory authority:

A claim of error in the exercise of that power is not sufficient . . . . It is necessary that the plaintiff *set out in his complaint the statutory limitation on which he relies.*

337 U.S. at 690, 69 S.Ct. at 1461 (emphasis added). Although plaintiffs here have asserted a willful violation of an Illinois statute, their complaint does not set forth a federal statute limiting the federal defendants' authority to act.

Moreover, the assertion that sovereign immunity is inapplicable because the federal officials acted *ultra vires* their statutory authority was never made in the district court. In their response to the federal defendants' motion to dismiss the complaint, plaintiffs argued that the sovereign had in these circumstances consented to suit under three different statutes, but there was no mention of an *ultra vires* basis for jurisdiction. In *Gibson v. Kroger Co.*, 506 F.2d 647 (7th Cir. 1974), *cert. denied*, 421 U.S. 914, 95 S.Ct. 1571, 43 L.Ed.2d 779 (1975), the plaintiff argued on appeal that the district court should not have dismissed his complaint because, although the court may have lacked

**1094**

jurisdiction under the authority cited to the trial court, it still had jurisdiction under a different statute. Because the plaintiff had not asserted jurisdiction under the second theory before the trial court, we refused to consider his contention on appeal.[11] In the case at bar, the *ultra vires* basis for jurisdiction was neither properly pleaded under *Larson* nor raised in the trial court. We will not consider it here.

### V

■ Finally the plaintiffs argue that the trial court's *sua sponte* dismissal of the private defendants, Pyramidwest Realty and Management, Inc. and Scherer Management, Inc., was erroneous. The trial judge found that "the complaint facially shows that defendants other than the federal defendants were and are acting only as agents of the federal defendants and as such should be dismissed."[12]

The plaintiffs argue that the *sua sponte* dismissal must be reversed because the plaintiffs were afforded neither notice nor an opportunity to oppose the dismissal. Moreover, plaintiffs assert, if the action was dismissed on the basis that the complaint failed to state a claim against the private defendants, that determination was erroneous.

Both plaintiffs and the private defendants cite our decision in *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 565 F.2d 1194 (7th Cir. 1977), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978), as support for their opposing positions as to the propriety of the *sua sponte* dismissal. In *Tamari*, it was argued that the district court's *sua sponte* dismissal of a complaint without notice and hearing violated due process. We held that a preliminary opinion issued by the court a month before the dismissal stat-

ing the court's view that the case should be dismissed was "sufficient" though not "ideal" procedure to withstand the allegations of a due process violation. Plaintiffs insist that *Tamari* stands for the proposition that a dismissal without any notice at all does violate due process. They also refer us to dicta in *Beshear v. Weinzapfel*, 474 F.2d 127, 133 (7th Cir. 1973), in which we upheld a dismissal in that case but stated: "[T]his is not a case of a motion to dismiss because of a failure of the complaint to state a claim upon which relief might be granted, as certainly there the court should hear the opposition grounds." Defendants, on the other hand, cite our holding in *Tamari v. Bache*:

> Even though the defendants did not file a motion to dismiss for failure to state a claim upon which relief could be granted, the district court was not precluded from entering an order of dismissal on its own motion provided that a sufficient basis for the court's action was otherwise apparent from the plaintiff's pleadings.

565 F.2d at 1199.

Without reaching the constitutional issue of whether due process was violated by the *sua sponte* dismissal, we conclude that in the instant case a sufficient basis for dismissal was not apparent from plaintiffs' pleadings and that the dismissal of the complaint against the private defendants must also be reversed. The complaint states:

> 14. . . . As managing agent for HUD with regard to the Merrill Project, and other buildings owned or operated by HUD, Defendant, Scherer Management, Inc., is responsible for the daily administration and management of those buildings. Among those duties are the collection and administration of security deposits including the payment of interest thereon.
>
> \*   \*   \*   \*   \*   \*

---

11. The rationale for the well-established rule that a federal court's lack of jurisdiction may be raised at any time is, of course, inapplicable to the reverse situation where a basis for the presence of jurisdiction has not been asserted at the appropriate time.

12. The private defendants argue that they were properly dismissed because they were acting

merely as agents of the federal defendants who, in turn, were properly dismissed on the basis of sovereign immunity. Because we have held that sovereign immunity was waived as to the federal defendants, it is clear that the private defendants' attempt to attach themselves to that alleged immunity defense must fail.

15. ... As managing agent for HUD with regard to the Kedvale Square Project, the Douglas-Lawndale Project and other buildings owned or operated by HUD, Defendant, Pryamid West [sic], is responsible for the daily administration and management of those buildings. Among those duties are the collection and administration of security deposits including the payment of interest thereon.

Pyramidwest contends that it cannot be liable to plaintiffs because the complaint shows that it was not the managing agent for HUD when the security deposits were paid. That argument lacks merit because whether Pyramidwest collected the security deposits for HUD is not relevant to its alleged duty after becoming HUD's managing agent in 1976 to make annual interest payments to the plaintiffs.

The private defendants strenuously argue that under Illinois law the acts of an agent are considered to be those of the principal, and that "where an agency is [as here] disclosed, the agent is not liable in any undertaking or contract unless that agent binds himself to become personally responsible in that contract." 1 Ill.L. & Prac., *Agency* § 130 (1953). The problem with that argument of the private defendants is that the very same section of *Illinois Law & Practice* states: "It is considered a well settled principle of law in Illinois that an agent is not liable for the acts of a disclosed principal *unless he takes an active part in violating some duty the principal owes to a third person.*" (emphasis added.) *Landau v. Landau*, 409 Ill. 556, 101 N.E.2d 103 (1951); *Grover v. Commonwealth Plaza*, 76 Ill.App.3d 500, 31 Ill.Dec. 896, 394 N.E.2d 1273 (1979).

It is an accepted rule that a complaint should be liberally construed and "should not be dismissed ... unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Here the complaint alleged that the private defendants have failed to perform their delegated duty of paying interest to the plaintiffs. We hold that plaintiffs have stated a claim that the private defendants, by failing to perform their duty to pay interest to plaintiffs, have taken and are taking an active part in violating the duty to pay interest which their principal, HUD, owes to the plaintiffs.

We affirm the trial court's dismissal of the complaint only insofar as plaintiffs claim damages in the amount of the security deposits. In all other respects, we reverse and order the complaint reinstated as to all defendants. Circuit Rule 18 shall apply on remand.