**TENANTS ASSOCIATED FOR A BETTER SPAULDING (TABS), et al., Plaintiffs,**

**v.**

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD), et al., Defendants.**

No. 82 C 4818.

United States District Court, N.D. Illinois, E.D.

May 10, 1983.

Anthony J. Fusco, Jr., Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs.

Thomas A. Demko, Gould & Ratner, Michael Panter, Robert Boron, Dan K. Webb, U.S. Atty. by Dan C. Murray, Asst. U.S. Atty., Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

Before the Court is the plaintiffs' Objection to the Report and Recommendation of Magistrate James T. Balog regarding the plaintiffs' Motion for Class Certification. For the reasons stated herein, the Court declines to adopt the Magistrate's Report and Recommendations.

The plaintiffs[1] have filed the instant lawsuit against the defendants[2] seeking a declaratory judgment, an injunction, and money damages.

The plaintiffs assert five counts in their complaint. Count I alleges that the federal defendants and Hobbs and Grubbs Investment, Inc., are maintaining a building that is in violation of the Chicago Municipal Code. The Plaintiffs seek a declaratory judgment that the federal defendants and Hobbs and Grubbs Investment, Inc., have failed to comply with the aforementioned Code as well as a mandatory injunction ordering them to abate all existing Code violations and to comply with the Code in the future. Count II[3] alleges that the named plaintiffs have suffered physical injuries resulting from the breach by all of the defendants of their implied warranty of habitability. The plaintiffs seek money damages to remedy these injuries. Count III alleges that the plaintiffs are third-party beneficiaries of a Regulatory Agreement entered into by HUD and Spaulding Rehab Venture in 1971. The plaintiffs allege that certain of the private defendants had breached this agreement by charging rents in excess of the authorized schedule from 1971 to June 1, 1981. The plaintiffs seek restitution from these private defendants for the excess rents allegedly charged from 1971 to June 1, 1981. Count IV reasserts the basic allegations made in Count III, except that Count IV addresses the federal defendants and Hobbs and Grubbs Investment, Inc., and encompasses the period beginning June 1, 1981, and continuing to the present.[4] The plaintiffs seek restitution

1. The plaintiffs consist of (1) Tenants Associated for a Better Spaulding ("TABS"), an unincorporated association comprised of the tenants living at 2614–28 North Spaulding Avenue, Chicago, Illinois; (2) Christine Allen, a/k/a Christine Powell, a resident of 2614 North Spaulding Avenue, Apartment 1B, since October of 1980; (3) Charles Williams, a resident of 2620 North Spaulding Avenue, Apartment 1F, since April of 1980; and (4) Kathleen Washington, a resident of 2614 North Spaulding Avenue, Apartment 2A, since October of 1980. TABS seeks only to represent Class A. (Plaintiffs' Reply Memorandum, p. 7). The three named plaintiffs seek to represent Classes A, B, and C.

2. The defendants consist of two groups, the federal defendants and the private defendants. The Department of Housing and Urban Development ("HUD"), Samuel Pierce, the Secretary of HUD, and Elmer R. Binford, the Director of the Chicago Area Office of HUD, constitute the federal defendants. The private defendants are comprised of (1) American National Bank and Trust Co. of Chicago, a trustee under Land Trust No. 75647; (2) Spaulding Rehab Venture, the owner and operator of the Spaulding Avenue Building from 1972 until June of 1981; (3) Gerald A. Weber, a representative of Spaulding Rehab Venture; and (4) Realty and Mortgage Co., the managing agent of the Spaulding Avenue Building from 1972 until August 1, 1981. Also named as a defendant is Hobbs and Grubbs Investment, Inc., the managing agent of the Spaulding Avenue Building for HUD since August 1, 1981.

3. The named plaintiffs do not move for class certification with respect to the allegations in Count II. They apparently intend to pursue their claims as individual-plaintiffs, rather than representative-plaintiffs.

4. According to Paragraphs 21 and 22 of the Complaint, which have been admitted by all defendants except Hobbs and Grubbs Invest-

from the federal defendants and Hobbs and Grubbs Investment, Inc., for the period stated in Count IV. In Count V, the plaintiffs allege that the federal defendants have unlawfully processed and approved a rent increase for the Spaulding Avenue Building (the Building) effective on September 1, 1981. The plaintiffs seek a preliminary and permanent injunction against the federal defendants, their agents, and successors in interest requiring them to comply with all applicable regulations, agreements, and laws concerning the implementation of rent increases.

■ The plaintiffs have moved pursuant to Fed.R.Civ.P. 23 for certification of three classes in this case. The first class, Class A, consists of all present tenants of the Building and applies to Counts I and V of the complaint. Class B, the second class, is composed of all current tenants of the building who have paid rents in excess of authorized levels as well as all tenants who have resided in the Building from June 29, 1972 to June 1, 1981 and have paid rents in excess of authorized levels. Class B applies only to Count III. The third class, Class C, is comprised of all current tenants who have paid rent in excess of the authorized levels as well as all tenants residing in the Building since June 1, 1981 who have paid rents in excess of the authorized levels. Class C is proposed seeking relief under Count IV.

Plaintiffs, in asserting that certification of the classes is warranted, have stated that the class members are so numerous that their joinder is impracticable. It is alleged that Class A consists of approximately 26 families, that Class B is comprised of approximately 128 families, and that roughly 28 families make up Class C. It is also asserted that there are questions of law or fact common to the classes, that the claims of the plaintiffs are typical of those of the classes, and that plaintiffs will fairly and adequately protect the interests of the classes. Additionally, plaintiffs assert that the defendants have acted on grounds generally applicable to the classes, thereby making final relief appropriate with respect to the classes as a whole. It is claimed that the prosecution of separate actions by individual members of each class would create a risk of inconsistent or varying adjudications with respect to individual members of each class, and that questions of law and fact common to the class predominate over any questions affecting individual class members. Finally, it is asserted that a class action is superior to other available methods for fair and efficient adjudication of the controversy.

In a detailed Report and Recommendation, the Magistrate concluded that as to no class were the requirements necessary for class certification met. This Court cannot agree.

## CLASS A AND CLASS C

The Magistrate concluded that both Class A and Class C failed to meet the numerosity requirement imposed by Rule 23. Class A is composed of at least 26 members currently residing in the building, while Class C is made up of at least 28 members who have paid rents in excess of authorized levels, 26 of whom currently reside in the Building and are presumably the same members that make up Class A.[5]

ment, Inc., HUD assumed management and control of the Spaulding Avenue Building on June 1, 1981, as mortgagee-in-possession due to the default of Spaulding Rehab Venture. On December 11, 1981, HUD filed a mortgage foreclosure against Spaulding Rehab Venture and American National Bank and Trust Co. of Chicago in the United States District Court for the Northern District of Illinois, No. 81 C 6949.

5. By referring to the number of class members as set out above, the Court makes no determination as to the exact size of the plaintiff classes. Indeed, as plaintiffs note, plaintiffs' motion for class certification refers to all "persons" who are or were residents of the building and not merely to the number of families or households involved. The Court recognizes the very real possibility that many of the tenants of the building may not live with their families, but may very well be individuals merely residing together who share the burden of the monthly rent. As is apparent from the Court's holding, the failure of the plaintiffs to allege the exact number of members belonging to each class is not fatal to the motion for class certifi-

■ There is no specific number of class members required to sustain a class action. *Cypress v. Newport News General and Nonsectarian Hospital Association,* 375 F.2d 648 (4th Cir., 1967). Instead, the District Court must consider a number of factors along with the numerosity of the class. In this consideration the Court has broad discretion which will not be disturbed unless it is shown that such discretion has been abused. *In re General Motors Corp. Engine Interchange Litigation,* 594 F.2d 1106 (7th Cir. 1979); *Susman v. Lincoln American Corp.,* 561 F.2d 86 (7th Cir.1977). Among·the factors to be considered along with the number of class members are geographic diversity, *In Re Penn Central Securities Litigation,* 62 F.R.D. 181 (E.D.Pa.1974), judicial economy, *Philadelphia Electric Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452 (E.D.Pa. 1968), and the ability of the individual class members to institute individual lawsuits. *Swanson v. American Consumer Industries, Inc.,* 415 F.2d 1326, 1333 (7th Cir.1969).

While in the instant case, the members of both Class A and Class C are not geographically diverse, such geographic nondiversity does not defeat the instant motion for class certification, especially in light of the other two factors noted above which, in the opinion of this Court, control the instant case.

Certainly it cannot be disputed that judicial economy will be served by allowing the instant matter to proceed as a class action. While the number of plaintiffs comprising Class A and Class C is certainly not overly large, it is quite numerous when compared to a single action. *See, Philadelphia Electric, supra.* Secondly, the likelihood that the individual plaintiff class members would be unable, financially or otherwise, to pursue their individual claims provides additional support for a class action. As the plaintiff class members are or were residents of federally-subsidized housing, there is a very real possibility that few, if any, of the class members are in the financial position to individually pursue this ac-

tion. Finally, it is certainly foreseeable that these plaintiff class members, most of whom currently reside at the Building, would be dissuaded from individually pursuing any remedy potentially available to them by the possibility of retribution against them on behalf of defendants. In light of these factors, it is readily apparent that the numerosity requirement of Rule 23 is satisfied and that, on that basis, certification of Classes A and C should not be denied.

The other requirements contained in Rule 23(a), those of commonality, typicality, and fair and adequate representation are also claimed not to be satisfied by the defendants.

In his Report and Recommendations, the Magistrate noted that potential conflict between the claims of Classes A and C should preclude certification of the proposed classes. The basis of this conclusion is that the named plaintiffs, acting as representatives of Class C and seeking restitution of excessive rental payments, would thereby prejudice the rights of the members of Class A who, *inter alia,* seek repairs and improvements on the building, by reducing the funds available to finance such repairs if the restitution were awarded. It is argued that the converse is also true. While the Court notes that this potential conflict may indeed materialize, at this juncture it cannot be concluded that this possibility should form the basis of a denial of the class.

■ The Magistrate's conclusion, and the federal defendants' arguments to the same effect, reach the typicality requirement contained in Rule 23(a)(3). The typicality aspect of the Rule requires that the claims of the class representatives be typical of the claims of the class. One factor to be considered in a typicality determination is whether there is a conflict of interest between the claims of the representatives and

cation. *Long v. Thornton Township High School District 205,* 82 F.R.D. 186 (N.D.Ill. 1979). However, even were these minimum numbers the very number of people seeking to

form a class, in light of the circumstances of the case, such numbers would be sufficient for class certification.

the claims of the class. 6 Fed.Prac.L.Ed. § 12:82. In the instant case, it is not contended that the claims of the representatives of Classes A and C, acting in their capacities as the representatives of the respective classes, are not typical of or in conflict with the claims of such classes. Instead, it is claimed that the two classes are necessarily at odds with each other, and that therefore a conflict is an inevitable result of the representatives' functioning in such capacity for both. This Court does not agree.

Initially it must be noted that 26 of the 28 households that make up Class C are the very same individuals that comprise Class A. That such class members were wronged in such a manner as to give rise to numerous claims against the same defendants does not affect the propriety of the class or create a conflict such as to leave the typicality requirement unsatisfied. Indeed, were the Court to concur with such an argument, the 26 individual class members would be in conflict with themselves.

The Court is well aware of the budgetary problems facing HUD as well as numerous other governmental and private agencies. However, the Court cannot agree that recovery against an entity is necessarily in conflict with all other awards against such entity. Certainly in any situation where more than a single action is pursued against a single entity, a potential for conflict over such entity's resources is present. However, such speculation over the possibility of conflict should not preclude class certification. *Marshall v. Electric Hose and Rubber Co.*, 68 F.R.D. 287 (D.Del.1975); 6 Fed. Prac., L.Ed. § 12:82.

Aside from the claims relating to conflict dealt with above under the aegis of typicality, the requirements of commonality contained in Rule 23(a)(2) and adequacy of representation found in Rule 23(a)(4) are not individually challenged and do not appear to present a bar to the certification of Classes A and C. The Court therefore concludes that, as to Class A and Class C, the requirements of Fed.R.Civ.P. 23(a) are satisfied.

Plaintiffs have requested the Court to certify Class A under Subsection (b)(2) of Rule 23. This subsection requires the Court to find that the party seeking class certification has alleged that

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole...

Fed.R.Civ.P. 23(b)(2).

The conduct alleged in Counts I and V, both of which are applicable to Class A, involves the maintenance of a building in violation of the Chicago Municipal Code and the unlawful approval of rent increases for the entire building. Both counts involve conduct applicable to the class as a whole. As to Count I, the injunctive relief, if granted, would likely require the defendants to act to the benefit of individual tenants by ordering repairs in individual units as well as to the benefit of all class members by repairs to common areas. While the Court is cognizant of the fact that certain repairs very well may not benefit each and every class member, it is of the opinion that the general neglect of the building (allegedly evidenced by the violation of local ordinances) sufficiently has been alleged to be the result of a scheme of conduct generally applicable to the class. Additionally, with respect to Count V, it is clear that any rent increases would affect all members of the class. Clearly, any relief ordered in this regard would benefit the class as a whole. The Court therefore holds the requirements of Fed.R.Civ.P. 23(b)(2) to be satisfied and finds certification of Class A to be warranted.

As to Class C, plaintiffs request certification pursuant to subsection (b)(3) of Rule 23 which states that a class action is proper if

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

Class C seeks recovery under Count IV which asserts that the federal defendants and certain private defendants charged excessive rents. The fact pattern alleged applies to all members of Class C and thus meets the requirement that common questions predominate. As to this Count, a decree ordering relief would certainly be applicable to the class as a whole and would be preferable to numerous suits and orders to the same effect. As all class members seek the same result, varied only as to amount, a class action as to this Count would be the preferred procedure. As none of the other factors contained in Rule 23(b)(3) are present, the requirements of that subsection are met. Class C must thus be certified.

## CLASS B

The Magistrate concluded, and this Court agrees, that plaintiffs have met all of the requirements of Rule 23(a). However, the Court does not agree with the conclusion of the Magistrate that the requirements of subsection (b)(3) of the Rule have not been met.

Count III, the only Count relating to Class B, alleges that the plaintiffs are owed restitution from the private defendants stemming from the charging of excessive rents in breach of a 1971 Regulatory Agreement. It is alleged that such conduct affected all the class members and that the procedures of the defendants for assessment and collection of rents was identical for all plaintiffs and for all members of Class B.

The fundamental legal issue in this Count is whether the proposed plaintiff class members are intended third-party beneficiaries of the Regulatory Agreement covering the building. Since there is a single Agreement and the third-party beneficiary claim of all class members rests on their status as tenants, resolution of this issue as to one plaintiff or members of the class resolves it as to all. *See, Holbrook v. Pitt,* 643 F.2d 1261, n. 1, (7th Cir.1981). The preliminary requirement of Rule 23(b)(3) which mandates that the Court find that questions of fact or law common to all class members predominate is therefore satisfied. Furthermore, the second aspect of the subsection, which requires the Court to determine that a class action is superior to other available methods for the fair and efficient adjudication of the controversy is also met here.

Decisions from this jurisdiction evaluating the superiority of class actions to enforce statutory rights and other rights of tenants of subsidized housing support maintenance of a class action here. *See, Concerned Tenants Association of Indian Trails Apartments v. Indian Trails Apartments,* 496 F.Supp. 522, 529 (N.D.Ill.1980). In *Goldman v. First National Bank,* 532 F.2d 10 (7th Cir.1976) the Seventh Circuit evaluated the superiority requirement of Rule 23(b)(3) and outlined certain considerations that are to be weighed by a trial court:

> On balance, class actions might very well be superior to individual suits, because [of] ... the inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually. *Goldman* at 15, quoting *Haynes v. Logan Furniture Mart,* 503 F.2d 1161, 1164–5 (7th Cir.1974).

*See also: Merrill Tenant Council v. HUD,* 638 F.2d 1086 (7th Cir.1981); *Holbrook v. Pitt,* 643 F.2d 1261, n. 1 (7th Cir.1981). The reasoning of *Goldman* regarding superiority applies in the instant case. The proposed plaintiff classes are lower income individuals who paid rents in excess of authorized levels, resided in substandard conditions and/or were affected by a rent increase

which was unlawfully approved. Many of the Class members were unaware of their rights with respect to these injuries. Furthermore, many members of Class C have moved from the building and are unaware of their rights with respect to restitution of excess rent which was paid and are unlikely to become aware because they are geographically dispersed. Moreover, the natural fear of a tenant of the consequences of initiating a lawsuit against a current landlord might effectively deter individual suits. Thus, the inability of the poor and uninformed to enforce their rights outside of this class action, the improbability that members of the class possess the ability or initiative to litigate individually and the similarity of issues raised are all factors present in the case before this Court.

The Magistrate's conclusion that Rule 23(b)(3) was not satisfied is based upon defendants' argument that the existence of numerous counterclaims and potential set-offs militates against the efficiency and superiority of a class action. While this argument is well taken, the Court does not believe that the anticipation of future claims or the fact that the amount of each individual plaintiff's recovery may vary should defeat a class action relating, at the very least, to the legal liability of the defendants.[6] Even if the Court were to determine only a single legal question relating to legal liability, judicial resources would be saved and the purpose of proceeding as a class action would be served. Class B shall therefore be certified as it meets the requirements of Rule 23.

## CONCLUSION

Because all of the requirements of Fed.R. Civ.P. 23 have been met in the instant case, Class A, Class B, and Class C as designated herein are hereby certified and the instant matter shall proceed as a class action as to all applicable Counts.

IT IS SO ORDERED.

---

[6]. At this juncture the Court does not mean to indicate that the class action relating to Count III will invariably determine only legal liability. Rather, it suggests a bifurcated trial as a poten-

tial means of dealing with individual claims and counterclaims if dealing with such claims in a class action were to prove overly burdensome.