(No. 35364.—

Frank Schiro, Appellant, *vs.* W. E. Gould & Company *et al.,* Appellees.

*Opinion filed January 22, 1960—Rehearing denied March 28, 1960.*

MITCHELL KILANOWSKI, of Chicago, for appellant.

ARTHUR ABRAHAM, and ISRAEL DORDEK, both of Chicago, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This is a direct appeal from a decree of the superior court of Cook County dismissing a suit for specific performance of a written contract to purchase certain real property, instituted by the purchaser, Frank Schiro, against the vendors, W. E. Gould & Company, and Joseph Goth and his wife. The issue in this cause is whether the trial court erred in sustaining defendant's motion to dismiss the complaint for specific performance of the real estate contract under the circumstances involved herein.

According to the uncontroverted facts, on December 18, 1948, Anthony Coniglio and Joseph Coniglio, and plaintiff

Frank Schiro executed certain "Articles of Agreement for Warranty Deed" with defendants, W. E. Gould & Company and Joseph Goth. The contract provided, in substance, that if purchasers made certain payments as provided therein defendants would convey to the purchasers, in fee simple, clear of all encumberances, by a warranty deed, the premises known as 8221 W. Irving Park Road, Chicago, Illinois. Under the contract, the purchasers agreed to pay defendants the principal sum of $18,050, consisting of the purchase price of $16,700, plus extras of $1,350. This sum was payable as follows: $4,000 at the time of signing the contract, $3,500 "when building completed and ready for occupancy," $8,000 by the assumption of first mortgage to Alliance Life Insurance Co. of Peoria, and the balance payable in the amount of $125 or more per month beginning February 1, 1949, which sum included the payment of $84.88 per month and the interest due on the first mortgage to the Alliance Insurance Co. The contract further provided that the purchasers pay all taxes, assessments or impositions that may be levied on the land subsequent to 1948, and upon their failure to make any of the payments or perform any of their covenants, the contract shall, at the option of the sellers, be forfeited, and the purchasers forfeit all payments, which may be retained by the sellers as liquidated damages.

On September 15, 1950, Joseph Coniglio and his wife conveyed all of their interest to Anthony Coniglio, and the latter and his wife conveyed all of their interest to plaintiff on September 21, 1950. Plaintiff alleges, and defendants do not deny, that defendants thereafter proceeded to build upon the premises, apparently in accordance with the contract, and that plaintiff made his payments in accordance with the terms of the contract, until the amount owing on the contract was only $695.08.

In January, 1955, plaintiff offered to pay the remainder due on the contract and requested a deed to the premises.

Plaintiff, however, refused the deed offered by defendants, which reserved the use of the water mains and water meter located on plaintiff's property for the benefit of lot 7, owned by defendants. It was then discovered that defendants did not construct a sewer solely for the use of plaintiff's premises, as required by the City Code of Chicago, but had constructed a system whereby the sewerage from plaintiff's property drained into the sewer on the adjoining lot 7; that the catch basin on plaintiff's property was used by the adjoining lot 7, contrary to the requirements of the code; and that defendants did not connect the water pipes on plaintiff's premises directly with the city water system, as required by the code, but rather connected them through the system installed on the adjoining lot 7.

Defendants refused plaintiff's request to install a water and sewerage system in conformity with the city code, since the cost of such work was approximately $3,000. Defendants also refused plaintiff's offer to pay the balance due on the contract and secure a deed with an abatement of the purchase price to remedy these construction defects.

Plaintiff thereupon instituted suit in February, 1956, for specific performance of the written contract, alleging the foregoing facts, and attaching a copy of the contract to the complaint. Plaintiff tendered the amount due under the contract and requested that defendants be ordered by the court to make the necessary alterations, or upon defendants' failure to do so within a date to be fixed by the decree, plaintiff be authorized to make such repairs and deduct them from the balance of the purchase price and have judgment for any sums in excess of the amount due the defendants.

Defendants moved to strike the amended complaint, alleging that it failed to state a cause of action against any of them, inasmuch as the articles of agreement attached to the complaint contained no provisions that defendants construct a sewer directly connected with the city system,

nor any provision that a septic tank would be built upon the premises for the exclusive use of plaintiff's building, nor even any provision that defendant would construct any building or septic tank or sewer system upon the premises. Defendants, therefore, asserted that they had no obligation to relocate the drains, or water pipes, or septic tank or sewer system; and, furthermore, that a court of equity would not require specific performance of a contract to make alterations or repairs.

The superior court of Cook County sustained defendants' motion to strike plaintiff's amended complaint, and dismissed the suit. From this order plaintiff has directly appealed to this court. Inasmuch as a suit for specific performance of a real-estate contract involves a freehold (*Laegeler* v. *Bartlett,* 10 Ill. 2d 478, 480), this court has proper jurisdiction to review the order of the superior court on a direct appeal.

In support of the legal sufficiency of the complaint, plaintiff relies upon the principle that specific performance of a contract for the sale of real estate will be ordered, at the election of the purchaser, even though the vendor may be unable to convey all of the property included in the contract, with an abatement of the purchase price for slight defects in quantity and quality of the estate. *Baker* v. *Puffer,* 299 Ill. 486, 490; *Gravelot* v. *Skender,* 9 Ill. 2d 15, 20; *Mitchell* v. *White,* 295 Ill. 135.

Defendants have no quarrel with this settled principle, but argue that it has no application in the instant case. They contend that under the terms of the contract sued upon they undertook no construction of any building or sewer system, and that since they can give the warranty title contracted for, there are no grounds for any abatement in the purchase price or specific performance of any alterations in the construction.

It is therefore incumbent upon this court to examine and construe the controverted contract. It is axiomatic

that contracts must be construed to give effect to the intention of the parties as expressed in the agreement, and to this end the contract should be construed as a whole, giving effect to every portion of the instrument and preferring that construction which renders the agreement legal rather than void. 91 C.J.S. 968.

While the contract attached to the amended complaint herein does not set forth in specific terms an undertaking by defendants to construct a building according to certain specifications, nevertheless it does contain certain references which indicate that the parties contemplated the sale and purchase of a building to be constructed by defendants. This is evident from the provision designating that the $18,050 due defendants under the contract consisted of a purchase price of $16,700, and $1,350 as "extras," and from the provision specifying that $3,500 would be due "when building completed and ready for occupancy." The use of the word "extras" in connection with the contract price of the real estate may reasonably be deemed to refer to additional construction features, particularly when construed with the clause referring to the building being completed. Moreover, the fact that a substantial part of the contract price to be paid to defendants for the property is conditioned upon the building being completed and ready for occupancy, indicates that the parties contracted for the sale and purchase of a building to be constructed by defendants, rather than for vacant real estate. Furthermore, defendants at no time deny that this was the intention of the parties to this contract, and that defendants did in fact undertake the construction of the building pursuant to this contract. Defendants merely seek to avoid any obligation by giving the contract a technical interpretation, contrary to the basic tenets of construction, and contrary to the obvious understanding of the parties.

Although the contract may be properly construed to involve the sale and purchase of a building to be constructed

by defendants, that contract is silent as to any specifications for the building. Consequently, defendants argue that they had no obligation to provide any particular type of sewerage or water system, and plaintiff has no right to require any changes in the installations provided, or any abatement of the purchase price.

It is settled law that all contracts for the purchase and sale of realty are presumed to have been executed in the light of existing law, and with reference to the applicable legal principles. (91 C.J.S. 1032.) Thus, the law existing at the time and place of the making of the contract is deemed a part of the contract, as though expressly referred to or incorporated in it. 12 I.L.P., 398, 399; *Economy Fuse & Mfg. Co.* v. *Raymond Concrete Pile Co.* (7th. cir.) 111 F.2d 875; *Illinois Bankers Life Ass'n* v. *Collins,* 341 Ill. 548; *Hindu Incense Mfg. Co.* v. *MacKenzie,* 403 Ill. 390; *Robertson* v. *Huntley and Blazier Co.,* 351 Ill. App. 378.

The rationale for this rule is that the parties to the contract would have expressed that which the law implies "had they not supposed that it was unnecessary to speak of it because the law provided for it." (12 I.L.P., 399.) Consequently, the courts, in construing the existing law as part of the express contract, are not reading into the contract provisions different from those expressed and intended by the parties, as defendants contend, but are merely construing the contract in accordance with the intent of the parties.

In *Economy Fuse & Mfg. Co.* v. *Raymond Concrete Pile Co.,* 111 F. 2d 875, the Federal court, in construing Illinois law, held, on the basis of numerous authorities, that it must read into every written contract the law governing the parties at the time the contract was made. The court explained that such law necessarily enters into and forms part of every contract as if specifically incorporated therein, and that the inclusion of such statutory and common-law obligations does not convert written con-

tracts into parol contracts. The case before the court involved a contract for the construction of concrete piles for the foundation of a proposed building, which specified only the length and maximum resistance of the piles, but was silent regarding the materials and mixing procedures which were the basis of the action. The court held that the contract must be construed to include the principles of Illinois law that a contractor has an obligation to perform its work in a workmanlike manner so that it will be reasonably fitted to accomplish its known purpose, and, therefore, imposed liability under the contract.

Applying this established law to the instant case, it is evident that the contract to purchase the land and building to be constructed by defendants included, as an integral part, the relevant provisions of the city code in existence at the time the contract was executed. The requirements of that code were, therefore, as much a part of the contract as if they had been enumerated by the parties. *Illinois Bankers Life Ass'n* v. *Collins*, 341 Ill. 548, 552.

The code provided, in substance, that the drainage and plumbing system of each new building shall be separate and independent of that of any other building, and that there be an independent connection with a public or private sewer; that the catch basin shall be for the exclusive use of the building constructed; and that all water pipes shall be directly connected to the city water system, and that no owner or occupant in possession of any water system may permit use of such water without the express consent of the city.

It is uncontroverted that defendants violated these code requirements in the construction of the building involved in plaintiff's contract. The sewerage and drainage were permitted to drain into the sewer located on the adjoining lot 7, owned by defendants; the catch basin was not installed exclusively for the use of plaintiff's building, but was used by the adjoining premises; and the water pipes

in the premises were not directly connected from the city water system, but were connected with the pipes running through lot 7. In fact, defendants recognized these irregularities, and, as hereinbefore noted, had offered plaintiff a deed, which plaintiff rejected, reserving the right to use of the city water mains and water meter located on plaintiff's property, for the benefit of the adjoining property.

These violations of the city code were tantamount to a breach of contract. This contract was further breached by the fact that defendants could not give a deed free and clear of all encumbrances, in accordance with their agreement, since, as a result of defendants' improper construction of the building plaintiff was required to share the sewerage and water systems with the owners of the adjoining property.

Notwithstanding these contract breaches, it is well established that a court of equity will, at the option of the purchaser, order specific performance of a contract to convey property so far as the vendor is able to perform, with an abatement out of the purchase money for any deficiency in title, quality or quantity of the estate. (*Baker* v. *Puffer,* 299 Ill. 486; *Gravelot* v. *Skender,* 9 Ill.2d 15, 20.) In the *Baker case* the court stated, at p. 492, that this rule, authorizing specific performance with an abatement in the purchase price, applies in all cases where there is an encumbrance, or a slight defect in the quantity or quality of the estate to be sold, and has been followed by this court and those of other jurisdictions.

Inasmuch as Anna Goth was not a party to the contract, specific performance should not be decreed against her. However, her interest will not preclude an order of specific performance against her husband, and the covenant of warranty in his deed will protect plaintiff against Anna Goth's inchoate right of dower. *Cities Service Oil Co.* v. *Viering,* 404 Ill. 538.

On the basis of this analysis, the superior court of Cook

County erred in dismissing plaintiff's complaint, and the decree will be reversed and the cause remanded to the trial court with directions to reinstate the complaint, and to permit defendants to answer the complaint if they so desire and to further consider this action in a manner consistent with this decision.

*Reversed and remanded, with directions.*